
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 532
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

SUE BURLAGE
(513) 564-7012
www.ca6.uscourts.gov

Filed: January 3, 2005

FILED
JAN 10 2005
CLERK'S OFFICE
DETROIT

Richard S. Busch
King & Ballow
315 Union Street
Suite 1100 Union Street Plaza
Nashville, TN 37201

Daniel D. Quick
Dickinson, Wright
38525 Woodward Avenue
Suite 2000
Bloomfield Hills, MI 48304-2970

Marc A. Becker
Munger, Tolles & Olson
355 S. Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

RE: 03-2148
Boladian, et al vs. UMG Recording, et al
District Court No. 03-70514

Enclosed is a copy of the court's decision which was entered today in the above-styled case.

Very truly yours,
Leonard Green, Clerk

*Sue Burlage*
Sue Burlage
Case Manager

Enclosure

cc: Honorable Arthur J. Tarnow
    Mr. David J. Weaver

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

03-2148

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
JAN 3 2005
LEONARD GREEN, Clerk

| | |
|---|---|
| ARMEN BOLADIAN, BRIDGEPORT MUSIC, INC.; NINE RECORDS, INC.; WESTBOUND RECORDS, INC., | ) ) ) ) |
| Plaintiffs-Appellants, | ) ) |
| v. | ) ) |
| UMG RECORDINGS, INC.; UNIVERSAL MUSIC & VIDEO DISTRIBUTION CORP; MEIJER, INC.; WARREN GRIFFIN III p/k/a WARREN G. individually and d/b/a MY KIDS MUSIC, | ) ) ) ) |
| Defendants-Appellees. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

**BEFORE:** NORRIS, COOK, Circuit Judges; BECKWITH, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.** This appeal stems from a long-running dispute between plaintiff Armen Boladian and "funk" musician George Clinton. Plaintiff alleges that the lyrics of a song performed by Clinton defamed him, invaded his privacy, caused him emotional distress, and unjustly enriched defendants. The district court granted defendants' Fed. R. Civ. P. 12(b) motion to dismiss. On appeal, plaintiff raises two issues: 1) the district court should have remanded the matter to state court because diversity jurisdiction was lacking; and 2) the district court erred when

---

[*] The Honorable Sandra S. Beckwith, Chief United States District Judge for the southern District of Ohio, sitting by designation.

it concluded that the language at issue constituted the kind of "rhetorical hyperbole" that falls outside the ambit of a traditional defamation claim.

I.

Plaintiff Boladian filed a verified complaint in Michigan state court on November 2, 2002 on behalf of himself and three recording companies that he owns: Bridgeport Music, Inc., Nine Records, Inc., and Westbound Records, Inc. (collectively "plaintiffs"). Each of these entities is a Michigan corporation or, in the case of Boladian, a Michigan resident. Named as defendants were UMG Recordings, Inc., Universal Music & Video Distribution, Corp., the rapper Warren Griffin III (performing as Warren G and doing business as My Kids Music), and Meijer, Inc., (collectively "defendants").

The lyrics that plaintiffs allege are defamatory can be found in a song written by Griffin called "Speed Dreamin'." Clinton performed the fourth verse of this song on a commercially released album called "The Return of the Regulator." The complaint alleges that the verse contains several references to Boladian that are defamatory:

> The Lyrics refer to Armen Boladian. The disputes and litigation between Armen Boladian and George Clinton and concerning George Clinton's music is well known to virtually everyone in the music business, and in particular to those persons involved in the rap music business. The reference by Clinton to "Armen" in the Lyrics would be understood by such persons as referring to Armen Boladian. The Lyrics, including the statements that refer to the "sorrows and horrors" of Boladian's abuse, that Boladian is a "disgrace to the species", and "got it [killing] comin'" are false and defamatory. . . .

. . . .

*03-2148*
*Boladian v. UMG Recordings, Inc.*

> The Lyrics are false and malicious and are injurious to Boladian in his profession and employment. In addition, the Lyrics impeach Boladian's integrity, virtue, and reputation, and are likely to lower Boladian's reputation in the estimation of others in the music industry with whom Boladian deals on a daily basis. The Lyrics will also deter others, including those having business relationships with Boladian, from doing business with Boladian. Publication of the Lyrics constitutes defamation *per se*.

Complaint at ¶¶ 11, 13.

Defendants removed the matter to federal court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. According to the notice of removal, UMG Recordings and Universal Music are Delaware corporations with their principal places of business in California. Griffin, who was never served with the complaint, is a resident of California. Meijer is a Michigan corporation with its principal place of business in that state, which would normally destroy diversity jurisdiction. 28 U.S.C. § 1332. The notice of removal, however, alleges that the joinder of the company was fraudulent:

> Defendants UMG Recordings and Universal Music assert that Plaintiffs cannot establish a cause of action against Defendant Meijer, Inc. under state law. Plaintiffs complaint fails because they are and will be unable to establish that Defendant Meijer, Inc., the alleged distributor of the allegedly defamatory music, "had any knowledge that the [albums] in question contained the allegedly [defamatory] material." *Dworkin v. Hustler Magazine, Inc.*, 611 F. Supp. 781, 785 (D. Wyo. 1985).

Notice of Removal at ¶ 12 (citation omitted).

Defendants filed a motion to dismiss and plaintiffs responded with their own motion to remand. The district court held a hearing on both motions on July 2, 2003, at the conclusion of which it ruled from the bench. On July 21, the court issued an order formally denying the motion to remand and granting the motion to dismiss.

*03-2148*
*Boladian v. UMG Recordings, Inc.*

## II.

Before reaching the substantive issues, we must determine whether the district court had jurisdiction over the suit. This court has outlined the proper approach to allegations of fraudulent joinder at some length:

> When reviewing the denial of a motion to remand a case to state court, we first look to determine whether the case was properly removed to federal court. *See Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). When an action is removed based on diversity, we must determine whether complete diversity exists at the time of removal. Indeed, "[d]iversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *SHR Ltd. Partnership v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989); *accord Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). In this regard, a party "seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *[Certain Interested Underwriters at Lloyd's, London, England v.] Layne*, 26 F.3d at 41; *Her Majesty The Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (stating that "[t]he party seeking removal bears the burden of establishing its right thereto").
>
> Moreover, this Court has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds. *See Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994); *accord Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998) (noting that "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"). To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. *See Alexander*, 13 F.3d at 949. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." *Id.* All doubts as to the propriety of removal are resolved in favor of remand. *See id.*

*Coyne v. American Tobacco Co.*, 183 F.3d 488, 492-93 (6th Cir. 1999).

03-2148
*Boladian v. UMG Recordings, Inc.*

As *Coyne* emphasizes, the burden of proof rests with the party seeking to remove the action to federal court. *Id.* at 493; *accord Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). Furthermore, the motive in joining a party is immaterial to the determination regarding fraudulent joinder. *Jerome-Duncan* at 907.

The complaint alleged only that Meijer, which sold the album containing the lyrics at issue, either knew or reasonably should have known that the entire composition would be available on the internet; it does not allege that Meijer reviewed or otherwise had knowledge of the lyrics. Complaint at ¶9. Under Michigan law, a distributor who has knowledge that a publication contains libelous matter is subject to liability unless it can show that it was in the dark about the contents. *Bowerman v. Detroit Free Press*, 287 N.W. 642, 645 (Mich. 1939) (newspaper distributor not liable for libel contained in newspaper if he can prove lack of knowledge of libel and that ignorance of libel not due to his own negligence).

In this case, defendants attached a declaration by a "buyer merchandiser" employed by Meijer to their brief in opposition to plaintiffs' motion to remand. This individual stated the following:

> Meijer purchases hundreds of thousands of compact discs and cassette tapes each year for retail sale in its stores. It purchases these works from a distributor, who warrants that they do not infringe the property rights of any third party. The products are delivered in sealed packages that Meijer does not open or review prior to sale. As a general matter, Meijer does not listen to the works it purchases for retail sale, and is unaware of the lyrics of any of the products it sells.
>
> In this case, Meijer did not inspect, did not listen to, and was unaware of any lyrics on the album "The Return of the Regulator," including the lyrics to the song "Speed Dreamin,'" before that album was purchased and sold by Meijer stores.

03-2148
*Boladian v. UMG Recordings, Inc.*

During argument to the district court, counsel for defendants suggested that the appropriate approach in a case with First Amendment aspects could be found in *Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), which states that a federal court may retain jurisdiction when fraudulent joinder is alleged, but will allow plaintiffs to move for remand if subsequent discovery reveals that diversity jurisdiction was lacking at the time of the initial motion to remand. *Id.* at 462. In *Lewis*, plaintiff sued *Time* magazine and a non-diverse retailer that distributed it. The district court rejected the argument that remand was required: "Adherence to a ritualistic 'all doubts resolved in favor of remand' rule where a serious claim of fraudulent joinder is raised in an action implicating First Amendment values would undermine the special responsibility of the federal courts in such cases." *Lewis* at 462; *see also Ludwig v. Learjet, Inc.*, 830 F. Supp. 995, 998 n.5 (E.D. Mich. 1993) (an "absolute standard is too onerous . . . [and] excessively burdensome for a defendant to have to disprove *any* possibility of liability"). The *Lewis* court went on to dismiss the claim against the distributer because the plaintiff had not specifically pleaded that the distributor either knew, or should have known, of the libelous contents of the article. Moreover, such knowledge cannot be presumed. *Id.* at 464-65.

In the instant case, the complaint fails to state a viable claim of defamation against Meijer because it premises liability solely upon the theory that the retail chain sold "Speed Dreamin'" and "reasonably should have known that the entire composition including the Lyrics would be publicly available on the internet at a number of websites within days or weeks of its release." Complaint at ¶ 9. However, these allegations are not enough to satisfy the requirements of Michigan law, which requires that the elements of a claim of defamation be specifically pleaded, *see Stencel v. Augat*

03-2148
*Boladian v. UMG Recordings, Inc.*

*Wiring Sys.*, 173 F. Supp.2d 669, 680 (E.D. Mich. 2001),[1] and that the publisher of statements alleged to be defamatory knew or should have known of their content. *Bowerman*, 283 N.W. at 645. The complaint makes no claim that Meijer had any familiarity with the lyrics prior to distributing the album containing them but instead premises liability upon the act of distribution to an internet audience. This is not enough. To hold otherwise would be to impose a duty on retailers of books and music to screen these products for potential defamatory material. Not only would that burden be onerous, it could potentially have a chilling effect upon protected speech because retailers, in an abundance of caution, might stop selling some categories of artistic products, such as rap music, to avoid liability. *See Bowerman*, 283 N.W. at 645 ("In these days of speedy dissemination of news its seems unreasonable to hold that a local distributor . . . should be required to check the contents of each issue for libelous matter in order to protect himself against liability for damages."); *Lewis*, 83 F.R.D. at 465 ("A distributor normally has no direct involvement in the preparation or production of an allegedly libelous article. . . . Accordingly, the danger in self-censorship is more threatening that it is with the original publisher . . . .").

---

[1] The district court in *Stencel* summarized the elements of a defamation claim to include:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statements irrespective of special harm, or the existence of special harm caused by the publication. These elements must be specifically pleaded, including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words.

*Id.* (citing *Gonyea v. Motor Parts Federal Credit Union*, 480 N.W.2d 297 (1991).

03-2148
*Boladian v. UMG Recordings, Inc.*

The only other count of the complaint that named Meijer as a party defendant was that of unjust enrichment. Because plaintiffs have failed to show that their defamation claim against defendants was viable, their derivative claim of unjust enrichment against Meijer also fails. A party may not skirt the requirements of defamation law by pleading another, related cause of action. *Hustler Magazine v. Falwell*, 485 U.S. 46, 53 (1988) (intentional infliction of emotional distress claim not a stand-in for defamation).

For these reasons, we hold that plaintiffs "could not have established a cause of action against the non-diverse defendant[] under state law." *Coyne*, 183 F.3d at 493. Accordingly, the district court properly concluded that it retained diversity jurisdiction.

We now turn to the district court's grant of judgment to defendants, a decision that we review *de novo*. *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). Furthermore, this court is required to construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle plaintiff to relief. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990).

Michigan courts have defined the elements of defamation as follows:

> 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

03-2148
Boladian v. UMG Recordings, Inc.

*Rouch v. Enquirer & News of Battle Creek, Michigan*, 487 N.W.2d 205, 211 (Mich. 1992) (citing *Locricchio v. Evening News Ass'n.*, 476 N.W.2d 112 (Mich. 1991)); *In re Kennedy*, 249 F.3d 576, 582 (6th Cir. 2001) (citing Michigan law).

Under *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), a defamation claim cannot be brought based upon statements that do not state actual, objectively verifiable facts about a plaintiff. *Id.*, 497 U.S. at 17-21. Even speech that is crude – what the Court calls "rhetorical hyperbole," "vigorous epithet," and "loose, figurative, or hyperbolic language" – merits protection. *Id.* at 17-21; *accord In re Chmura*, 626 N.W.2d 876, 886 (Mich. 2001) ("before a . . . public communication is tested for falsity, the communication at issue must involve objectively factual matters"). Thus, in *Ireland v. Edwards*, 584 N.W.2d 632 (Mich.App. 1998), the court concluded that an allegation that someone was an "unfit mother" was subjective and a second statement, that a mother "never spent a moment with [her] child," could be viewed as "rhetorical hyperbole" and, therefore, a claim for defamation did not lie. *Id.* at 637-38. Morever, context is critical, *id.* at 638, and whether a statement is susceptible to defamatory interpretation is an issue of law for the court to decide. *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 236 (Mich. App. 1999).

Applying this analytical framework to the lyrics of "Speed Dreamin'," we conclude that plaintiffs have failed to meet their burden of showing an actual, objectively verifiable defamatory statement. There was no specific allegation, such as an act of child abuse, that could be proven; rather, the abuse was the kind of inchoate "loose, figurative" language that the Court referred to in *Milkovich*. For instance, the statement that "Armen" is a "disgrace to the species," represents the kind of puerile taunt that, for better or worse, is typical of rap music. *See Milkovich* at 17 ("use of

*03-2148*
*Boladian v. UMG Recordings, Inc.*

the word "traitor" in literary definition of a union "scab" not basis for a defamation action under federal labor law since used "'in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members'") (quoting *Letter Carriers v. Austin*, 418 U.S. 264, 284-286 (1974).

Plaintiffs direct our attention to *Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002), in which the ninth circuit allowed a defamation action against pop star George Michael to go forward in part because Michael, who in a song described a sexual encounter with plaintiff policeman, enjoyed celebrity status. By analogy, plaintiffs argue that George Clinton enjoys such status, and his defamatory statements (as promulgated by defendants) must be evaluated in that light. *Rodriguez* arose after Michael pleaded no contest to charges of disorderly conduct stemming from illicit behavior in a men's restroom. Thereafter, he released a song that parodied the incident. In the course of promoting the song, Michael gave interviews in which he stated that Rodriguez, the officer who had arrested him, had enticed him into a sexual encounter. The ninth circuit characterized the inquiry in these terms: "[T]he dispositive issue in this case is whether a reasonable fact finder reading or listening to the statements made by Michael could conclude that they 'imply a provably false factual assertion.'" *Id.* at 985 (quotation omitted). In reaching an affirmative conclusion, the court looked to the totality of the circumstances and found that "Michael's statements asserted the precise factual nature of his accusation." *Id.* at 987. It went on to note, "[s]imilarly the colorful and humorous language Michael used to speak about the incident did not 'negate the impression that [Michael] was seriously maintaining [that Rodriguez] committed [the lewd act].'" *Id.* (citation omitted).

- 10 -

03-2148
*Boladian v. UMG Recordings, Inc.*

The feature of *Rodriguez* that distinguishes it from the case before us is that the statements describe a specific event: an incident in a men's room that resulted in an arrest. In our case, the statements do not relate to a specific time period or locale and are therefore not susceptible to being proven objectively false. Consistent with *Milkhovich*, we conclude that the complaint fails to state a claim of defamation because it fails to allege facts about defendant Boladian that are susceptible to verification.

Having held that the dismissal of plaintiffs' defamation claim was proper, it follows that the claims of Boladian's companies fall away, as do the claims of false-light infliction of emotional distress and unjust enrichment, which hinge upon the existence of statements capable of being proved false. *See Porter v. Royal Oak*, 542 N.W.2d 905, 909 (Mich. 1995) (action for false-light invasion of privacy requires broadcast to public "information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position").

### III.

The judgment of the district court is **affirmed**.